# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Case Nos. 21-cr-00480-LKG; |
| ) | 22-cr-00391-LKG (Related 24-cv-00152) |
| BEHROUZ MOKHTARI, ) | |
| ) | Dated:  October 8, 2024 |
| Defendant/Petitioner. ) | |
| ) | |

### MEMORANDUM OPINION AND ORDER ON MOTION TO VACATE SENTENCE

### I.     INTRODUCTION

On January 16, 2024, Petitioner *pro se*, Behrouz Mokhtari, filed a motion to vacate his guilty pleas, conviction and sentence, pursuant to 28 U.S.C. § 2255. ECF No. 85. The motion is fully briefed. ECF Nos. 85, 98, 98-1, 100 and 101. No hearing is necessary to resolve the motion. *See* L.R. 106.5 (D. Md. 2023); 28 U.S.C. § 2255. For the reasons that follow, the Court **DENIES** the Petitioner's motion.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

On July 25, 2023, the Court sentenced the Petitioner *pro se*, Behrouz Mokhtari, to 41 months of imprisonment, to be followed by a three-year term of supervised release, to run concurrently, in two related criminal cases. ECF Nos. 15, 55 (21-cr-480); ECF No. 18 (22-cr-391). The Petitioner's sentence arises from his convictions of one count of conspiracy each, in violation of 18 U.S.C. § 371, in the two criminal cases. ECF No. 1 (21-cr-480) ECF No. 1 (22-cr-391).[1]

The Offenses Charged

As background, on December 9, 2021, a federal grand jury returned an Indictment against the Petitioner and his co-Defendant, Amirezza Rahvarian, charging them with one count of conspiracy, in violation of 18 U.S.C. § 371. ECF No. 1 (21-cr-480). In that case, the

---

[1] The Petitioner was initially represented by the Office of the Federal Public Defender, but he retained private attorneys Dennis Boyle and Blerina Jasari in February 2022. ECF Nos. 25, 26 (21-cr-480).

Government alleged that the Petitioner engaged in a conspiracy (the "FSR Conspiracy"), with Mr. Rahvarian and others, to violate certain laws and sanctions imposed by the United States on the Islamic Republic of Iran (the "Iranian Sanctions"). *Id*. at 4-7.

In this regard, the Government alleged that the FSR Conspiracy took place between on or before March 2018 and at least September 2020, and involved a collection of businesses owned by the Petitioner ("the FSR Network") that were located in Iran and the United Arab Emirates. *Id*. at 4. The Government also alleged that these businesses engaged in various aspects of the petrochemical and shipping business and that the Petitioner and his co-conspirators used the FSR Network to provide services to Iranian entities, including engaging in transactions involving petrochemical products of Iranian origin, refining petrochemical products and transporting them by sea. *Id*. at 4-5. And so, the Government maintained that the Petitioner and his co-conspirators engaged in United States dollar transactions that were processed through various bank accounts located in the UAE, including a bank account that operated as a conduit for the FSR Network, to conceal the fact that the conspirators were engaging in financial transactions with Iranian entities and providing services to Iranian entities in violation of the Iranian Sanctions. *Id*. at 6-7.

In the second case, the Government alleged that, in or before February 2013, and continuing until at least June 2017, the Petitioner knowingly engaged in a conspiracy ("the LPG Conspiracy") with a number of Iranian nationals and others to access the United States financial system to support the shipment of illicit shipments of petrochemical products to and from Iran, in violation of the Iranian Sanctions. ECF No. 1 (22-cr-391). The Government also alleged that, as part of this conspiracy, the Petitioner created a shell company to purchase two liquid petroleum gas tanker vessels in order to transport Iranian petrochemical products in international commerce on behalf of, and for the benefit of, various Iranian entities that were associated with the Government of Iran. *Id*. at 4

The Government further alleged that the Petitioner and his conspirators used various other entities to transfer ownership of the tanker vessels to conceal their financial and ownership interests in the vessels. *Id*. And so, the Government alleged that the conspirators used the United States financial system, to engage in various transactions related to the operations of the vessels and related expenses. *Id*. at 4-5.

<u>The Petitioner's Guilty Pleas And Sentencing</u>

On March 27, 2022, the parties executed a tolling and waiver of venue agreement with respect to the then-uncharged LPG Conspiracy offense. ECF No. 95-1 (21-cr-480). At the time the parties executed this tolling agreement, the statute of limitations had not yet run on the LPG Conspiracy offense. ECF No. 100 at 4. The parties subsequently entered into two more tolling and waiver agreements on July 29, 2022, and September 19, 2022, respectively. ECF Nos. 95-2, 95-3(21-cr-480). Pursuant to these agreements, the statute of limitations as to the LPG Conspiracy offense was tolled between March 27, 2022, and December 2, 2022. *Id*.

On October 31, 2022, the Petitioner entered into a Plea Agreement with the Government. ECF No. 43 (21-cr-480). In the Plea Agreement, the Petitioner agreed to plead guilty to the pending Indictment in criminal case No. 21-480 and to also plead guilty to a Criminal Information that the Government intended to file, which would charge him with one count of conspiracy to violate 18 U.S.C. § 371, in connection with the LPG Conspiracy. *Id*. On November 14, 2022, the Government charged the Petitioner in a Criminal Information with one count of conspiracy to violate 18 U.S.C. § 371 in this second criminal case. ECF No. 1 (22-cr-391).

On January 9, 2023, the Court conducted a Rule 11 hearing and accepted the Petitioner's guilty plea to the conspiracy count in the Indictment in the first criminal case and the conspiracy count in the Information in the second criminal case. ECF No. 100-1. During the Rule 11 hearing, an Iranian interpreter was present and simultaneously translated the proceedings for the Petitioner. *Id.* at 3, 9:7-11.

During the Rule 11 hearing, the Petitioner made the following representations to the Court under oath:

- The Petitioner signed the Plea Agreement and the accompanying stipulation of facts after having either reading these documents, or having the documents read to him in a language that he could understand, reviewing the documents with his attorney and making sure he understood the documents. *Id.* at 13:12-16; 13:21-14:3.

- The Petitioner fully discussed the charges in the Indictment and the Information with his Defense Counsel and understood the charges. *Id.* at 32:15-33:2.

- The Petitioner understood that the Court was not a party to the Plea Agreement and that neither Defense Counsel, the Government nor the Court can make a binding promise or prediction regarding the sentence that he would receive. *Id*. at 29:4-10.

3

- The Petitioner agreed that the Plea Agreement was the entire agreement and no one had made any other promises or threats to convince him to enter into the Plea Agreement. *Id.* at 31:21-25, 32:1-4.

- The Petitioner was "satisfied" with the services of his lawyers. *Id.* at 33:3-5.

- The Petitioner was not under the influence of a substance that would affect his thinking during the Rule11 hearing. *Id.* at 8:23-9:6.

- The Petitioner understood the charges (including the elements of the charges) to which he was pleading guilty and the punishments associated with the charges. *Id.* at 10:1-16, 14:13-15:6.

- The Petitioner understood his fundamental rights associated with the right to a jury trial. *Id.* at 10-12.

- The Petitioner understood the applicability of the United States Sentencing Guidelines and the sentencing factor analysis. *Id.* at 24:17-26:15.

- The Petitioner agreed that the stipulation of facts read by the Government was an accurate summary of the facts supporting the guilty pleas and that he in fact committed the conspiracies as described in the statement of facts. *Id.* at 15:18-24:16.

At the conclusion of the Rule 11 hearing, the Court determined that the Petitioner entered a knowing and voluntary plea of guilty in both cases. *Id*. at 33:8-25, 34:1-9. And so, the Court accepted the Petitioner's guilty pleas. *Id*. at 34:13-25, 35:1-3.

On July 25, 2023, the Court sentenced the Petitioner to 41 months of imprisonment, and to a three-year term of supervised release in each case, to run concurrently. ECF Nos. 53, 55, 56 (21-cr-480).

<u>Defense Counsel's Affidavit</u>

On May 10, 2024, the Petitioner's former Defense Counsel, Dennis E. Boyle, Esq., submitted a sworn affidavit regarding the Petitioner's motion to vacate. ECF No. 97 (21-cr-480). In the affidavit, Mr. Boyle states that he was retained to represent the Petitioner in February 2022. *Id*. at ¶ 2. Mr. Boyle also states that:

> On January 9, 2023, Mr. Mokhtari entered pleas of guilty to charges in cases 21- CR-480 and 22-CR-391 pursuant to a negotiated plea agreement with the [G]overnment. I met with Mr. Mokhtari at his home on at least four occasions to go over the specific terms of the plea agreement. I also left the plea agreement with him for over a week so that he could review it when I was not present and go over it with family members so that he would have a better understanding of it. Over the course of months, we also met with the [G]overnment on at least two occasions to provide "substantial assistance" to the

4

>> [G]overnment.
>
> *Id*. at ¶ 3.

With regards to the parties' tolling agreements, Mr. Boyle also states that:

> With respect to 22-CR-391, I was immediately aware of the statute of limitations when I first discussed the case with Assistant U.S. Attorney Kathleen Gavin. At the time we first discussed the case, the statute of limitations had not yet expired; however, the [G]overnment was also aware of the statute of limitations.
>
> I advised Mr. Mokhtari that he had a couple of options with respect to the charges in case 22-CR-391. First, I advised him that we could agree to extend the statute of limitations by signing a tolling agreement. Since he was cooperating with the government, I advised him that if he continued to work with the [G]overnment, I did not believe there would be any additional time associated with 22-CR-391 and that any sentence would likely be concurrent. I further advised him, as I had multiple times, that the sentence would ultimately be up to the Judge.

*Id*. at ¶¶ 5-6. Mr. Boyle also states that "[a]t no time did I ever tell [the Petitioner] that there was no defense or that I would not represent him at trial in either case." *Id*. at ¶ 10.

Lastly, Mr. Boyle states that the Petitioner's statements that he never would have entered a plea of guilty in the criminal cases, but for the charge in the Information, and that he was intent on proceeding to trial in the single count of the conspiracy, are not accurate. *Id*. at ¶¶ 14-15. In this regard, Mr. Boyle represents to the Court that:

> Nearly all the plea discussions between me and Mr. Mokhtari involved the Indictment, 21-CR-480. Mr. Mokhtari was intent on cooperating very early in the case. However, before substantive plea negotiations could begin, it was necessary for us to collect and review all the discovery from the [G]overnment and discuss the facts of 21-CR-480 with Mr. Mokhtari. After reviewing the discovery and discussing the case with Mr. Mokhtari, Mr. Mokhtari decided to cooperate with the government. This cooperation ultimately led to the plea agreement.
>
> Mr. Mokhtari and I also discussed 22-CR-391, but Mr. Mokhtari's decided to negotiate a plea of guilty with respect to 21-CR-480 before I had any knowledge of the facts of 22-CR-391.

*Id*. at ¶¶ 15-16.

**B.     Relevant Procedural History**

On January 16, 2024, the Petitioner filed a motion to vacate guilty plea, conviction and sentence, pursuant to 28 U.S.C. § 2255. ECF No. 85. On April 10, 2024, the Court ordered the Petitioner's former Defense Counsel to file an affidavit regarding the Petitioner's claim of in effective assistance of counsel. ECF No. 96. On May 10, 2024, the Petitioner's former Defense Counsel filed an affidavit. ECF No. 97.

On May 20, 2024, the Petitioner filed a motion for leave to amend his motion to vacate and a proposed Amended Petition. ECF No. 98. On June 10, 2024, the Government filed a response in opposition to the Petitioner's motion to vacate. ECF No. 100. The Petitioner filed a reply on July 1, 2024. ECF No. 101. On September 30 2024, the Court granted Petitioner's motion for leave to file an Amended Petition. ECF No. 111.

The Petitioner's motion to vacate guilty plea, conviction and sentence having been fully briefed, the Court resolves the pending motion.

**III.    STANDARDS FOR DECISION**

When evaluating a defendant's claim of ineffective assistance of counsel, the Court considers whether the conduct of the defendant's attorney fell "within the range of competence normally demanded of attorneys in criminal cases." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). And so, claims of ineffective assistance of counsel are decided by the applying the following two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.*; *see also Roach v. Martin*, 757 F.2d 1463, 1476-77 (4th Cir. 1985); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

In evaluating the first prong of this test, the Court should make every effort to assess the attorney's conduct from counsel's perspective at the time. *Strickland*, 466 U.S. at 690. Because

of the difficulty in assessing an attorney's performance, the Supreme Court has recognized that there is a strong presumption that defense counsel's conduct was competent. *Id*. And so, the defendant bears the burden of overcoming the presumption that an attorney's actions were based on "sound trial strategy" and proving that defense counsel's assistance did not reach an "objective standard of reasonableness." *Id.* at 688-89.

The second prong of the test requires the defendant to show that the attorney's conduct actually prejudiced the defense. *Id.* To satisfy this prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. And so, if the defendant is unable to make both of these showings, "it cannot be said that the conviction. . . resulted from a breakdown in the adversary process" that led to an unreliable verdict. *Id*

Relevant to the pending motion to vacate, when a claim of ineffective assistance of counsel relates to a guilty plea, the defendant "must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Missouri v. Frye*, 566 U.S. 134, 148 (2012)). In this regard, the defendant has the burden of proving "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id*. at 162-63 (2012) (alteration in original) (internal quotation marks omitted) (quoting *Hill*, 474 U.S. at 59). To demonstrate that counsel was constitutionally ineffective when a defendant enters a guilty plea, the defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness and (2) that the defendant was prejudiced as a result. *Lee v. United States*, 582 U.S. 357, 362-63 (2017).

The defense counsel's conduct is, however, given a strong presumption of reasonableness by the Court and reversal is warranted only if the defendant can affirmatively prove prejudice. *Savino v. Murray*, 82 F.3d 593, 599 (4th Cir. 1996). And so, the defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Lee*, 582 U.S. at 362.

Lastly, the Court must also consider whether there was an adequate showing that the defendant, if properly advised, would have opted to go to trial. *Id.* at 364. In doing so, the Court "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. [Rather, the Court] should instead look

7

to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 367-68. And so, only when both prongs of the *Strickland* test are satisfied can it be said that "the conviction … resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

IV. **ANALYSIS**

The Petitioner has moved to vacate his guilty pleas, conviction and sentence in two related criminal matters, upon the grounds of ineffective assistance of counsel, pursuant to 28 U.S.C. § 2255. ECF No. 85. Specifically, the Petitioner argues that he entered involuntary guilty pleas, due to the ineffective assistance of his former Defense Counsel, because: (1) his former Defense Counsel "lied to [him] about the non-existence of a defense to either of the two charges in [the cases], when he advised [the Petitioner] to enter a plea of guilty instead of moving to dismiss the charges in the Information;" (2) his former Defense Counsel failed to properly explain the implications of a waiving the statute of limitations defense; (3) his sentence deviated from the "probationary sentence" that his former Defense Counsel led him to believe would be imposed; and (4) there was a communication barrier, due to his limited English proficiency, during meetings with his former Defense Counsel. ECF No. 85. And so, the Petitioner requests that the Court vacate his guilty pleas and sentence as unconstitutional. *Id*.

In its response in opposition to the Petitioner's motion, the Government counters that the Court should not vacate the Petitioner's guilty pleas and sentence, because: (1) the Petitioner's guilty pleas were knowing and voluntary; (2) the Petitioner's former Defense Counsel was not constitutionally ineffective; and (3) the Petitioner cannot show that he would have proceeded to trial but for his former Defense Counsel's alleged ineffective assistance. ECF No. 100 at 10-20. And so, the Government requests that the Court deny the Petitioner's motion to vacate. *Id*. at 20.

For the reasons discussed below, the Petitioner has neither shown that his former Defense Counsel's performance was constitutionally deficient, nor that any alleged deficient performance prejudiced the defense. And so, the Court DENIES the Petitioner's motion to vacate.

**A. The Petitioner Has Not Shown That His Counsel's Performance Was Ineffective**

As an initial matter, the Petitioner's claim that his former Defense Counsel was constitutionally ineffective is unsubstantiated by the evidence and litigation history of this matter. In his motion to vacate, the Petitioner argues that his former Defense Counsel provided ineffective assistance, because: (1) he was unable to understand his counsel's advice during

meetings, due to his limited proficiency in the English language; (2) his counsel lied to him, by telling him that he had no defense to the conspiracy charges and failed to advise him that he had an affirmative statute of limitations defense to the LPG Conspiracy offense; (3) his former Defense Counsel caused him to enter into invalid tolling agreements; and (4) his former Defense Counsel "overpromised" as to the sentence that he would receive, by "assuring him that he would likely receive a probationary sentence despite the guidelines suggesting a range of 46-57 months." ECF 85 at 5-7; ECF 98-1 at 14-15. The Petitioner's claims of ineffective assistance of counsel are, however, contradicted by the contemporaneous factual record in this matter for several reasons.

First, the factual record before the Court shows that the Petitioner fully understood the advice provided by his former Defense Counsel. In his motion to vacate, the Petitioner argues that there was a "communication barrier due to his limited English proficiency" between him and his former Defense Counsel. ECF No. 98-1 at 13. But the evidence before the Court shows that the Petitioner repeatedly acknowledged to the Court that: (1) he understood the advice of his counsel; (2) he was satisfied with his legal representation; and (3) he is fluent in English.

Notably, during the Rule 11 hearing held on January 9, 2023, the Petitioner represented to the Court that he signed the Plea Agreement and the accompanying Stipulation of Facts, after having: (1) either read these documents, or having the documents read to him in a language that he could understand; (2) reviewed the documents with his attorney; and (3) ensured that he understood the documents. *Id.* at 13:12-16; 13:21-14:3. The Petitioner also represented to the Court that he fully discussed the charges in the Indictment and the Information with his former Defense Counsel and that he understood these charges. *Id.* The Petitioner further informed the Court that he was "satisfied" with the services of his former Defense Counsel. *Id.* at 32:15-33:2; 33:3-5. Given this, the factual record in this matter does not support the Petitioner's claim that he did not understand the Plea Agreement.

The factual record for this matter also shows that the Petitioner was able to communicate effectively with, and understand the advice given by, his former Defense Counsel. During his interview in connection with the preparation of the Presentence Report for this matter, the Petitioner acknowledged that he is fluent in English. ECF 49 at ¶ 67. The Presentence Report also makes clear that the Petitioner is a well-educated businessman, who has successfully operated several businesses while living in the United States. *Id.* at 66; 68-71. As the Government correctly observes in its response in opposition to Petitioner's motion, the Petitioner

9

also responded to several questions from the Court in English during the Rule 11 hearing.[2] ECF No. 100-1 at 5:23-7:6. Given this, the factual record also does not substantiate the Petitioner's claim that a communication barrier hindered his ability to receive and understand the legal advice provided by his former Defense Counsel.

The Petitioner's claim that his former Defense Counsel "lied to [him] about the non-existence of a defense to either of the two charges in this case" is also unsubstantiated. The Petitioner's former Defense Counsel, Dennis E. Boyle, Esq., has submitted a sworn affidavit regarding the Petitioner's motion to vacate, in which Mr. Boyle represents to the Court that he discussed both of the criminal cases at issue with the Petitioner on multiple occasions. ECF No. 97 at ¶ 3. Mr. Boyle also represents to the Court that "[a]t no time did I ever tell [the Petitioner] that there was no defense or that I would not represent [the Petitioner] at trial in either case." *Id*. at ¶ 10.

With regards to the Petitioner's guilty pleas, Mr. Boyle also makes clear that the Petitioner's statements that he never would have entered a plea of guilty, and was intent on proceeding to trial in the single count of the conspiracy, are "not accurate. *Id*. at ¶¶ 14-15. In this regard, Mr. Boyle represents to the Court that:

> Nearly all the plea discussions between me and Mr. Mokhtari involved the Indictment, 21-CR-480. Mr. Mokhtari was intent on cooperating very early in the case. However, before substantive plea negotiations could begin, it was necessary for us to collect and review all the discovery from the [G]overnment and discuss the facts of 21-CR-480 with Mr. Mokhtari. After reviewing the discovery and discussing the case with Mr. Mokhtari, Mr. Mokhtari decided to cooperate with the [G]overnment. This cooperation ultimately led to the plea agreement.
>
> Mr. Mokhtari and I also discussed 22-CR-391, but Mr. Mokhtari's decided to negotiate a plea of guilty with respect to 21-CR-480 before I had any knowledge of the facts of 22-CR-391.

---

[2] The Government also represents to the Court, and the Petitioner does not dispute, that the Petitioner participated in three separate proffer sessions with the Government, during which he participated in English and only occasionally asked the interpreter for clarification of an English word or phrase. ECF No. 100 at 13.

10

*Id*. at ¶¶15-16.

While the Petitioner generally alleges that Mr. Boyle provided misleading advice regarding his defenses, he provides no evidence to rebut Mr. Boyle's sworn affidavit regarding his decision to enter into a Plea Agreement with the Government. *See generally* ECF Nos 85, 98-1. And so, again, the evidence before the Court shows that Mr. Boyle did not mislead the Petitioner with regards to his defenses.

The Petitioner's claim that his former Defense Counsel failed to properly explain the implications of a waiving the statute of limitations defense in these matters is also unsubstantiated. In his sworn affidavit, Mr. Boyle states that:

> With respect to 22-CR-391, I was immediately aware of the statute of limitations when I first discussed the case with Assistant U.S. Attorney Kathleen Gavin. At the time we first discussed the case, the statute of limitations had not yet expired; however, the [G]overnment was also aware of the statute of limitations.
>
> I advised Mr. Mokhtari that he had a couple of options with respect to the charges in case 22-CR-391. First, I advised him that we could agree to extend the statute of limitations by signing a tolling agreement. Since he was cooperating with the [G]overnment, I advised him that if he continued to work with the [G]overnment, I did not believe there would be any additional time associated with 22-CR-391 and that any sentence would likely be concurrent. I further advised him, as I had multiple times, that the sentence would ultimately be up to the Judge.

*Id*. at ¶¶ 5-6. And so, Mr. Boyle makes clear in his affidavit that he advised the Petitioner of his options regarding the tolling agreement and venue waiver and of the possible consequences of being charged separately in another venue with the LPG Conspiracy. *Id*. at ¶¶ 6-7.[3]

The Petitioner's argument that his former Defense Counsel advised him to enter into "legally invalid" tolling agreements that lacked consideration is similarly at odds with the evidence. ECF 98-1 at 15. As this Court has recognized, "agreements to toll applicable statutes of limitations are not unusual and are generally upheld." *Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679, 685 (D. Md. 2000). Here, the plain language of the tolling

---

[3] The Government also argues that the Petitioner's former Defense Counsel could not have raised a statute of limitations defense when joined the case in February 2022, because the statute of limitations with regards to the LPG Conspiracy offense had not yet expired. ECF No. 100 at 14-15.

11

agreements makes clear that the Petitioner and the Government both gave up certain rights by entering into these agreements.  Notably, the tolling agreements provide, in relevant part, that:

> This tolling of the statute of limitations and waiver of venue is agreed to for the following purposes: (1) to permit this Office the opportunity to fully develop the facts related to the matters described in Paragraph 2; (2) to afford you, as counsel for your client, the opportunity to make one or more presentations to this Office concerning these facts; (3) to afford your client an opportunity to make a personal presentation to this Office or to testify about the matters referenced in Paragraph 2 above before the Grand Jury if your client chooses to do so; (4) to afford this Office a reasonable opportunity for additional investigation with regard to any representations or arguments made by you or your client in regard to the matters described in Paragraph 2; (5) to afford your client the opportunity to cooperate in an ongoing criminal investigation against others; and (6) to afford this Office and your client a reasonable opportunity to explore the possibility of a resolution of the matter prior to indictment. Both of the parties to this agreement believe that tolling the statute of limitations for the tolled time period and waiver of venue is in its interest.

ECF No. 95 (21-cr-480) at 1-3.  The tolling agreements also make clear that the Petitioner understood that, "by the terms of this agreement, [he was] giving up certain potential benefits that might otherwise accrue to [him] as a result of the operation of the statute of limitations and venue." *Id*.

       The Petitioner's claim that his guilty pleas were not knowing and voluntary is similarly belied by the evidence.  During the Rule 11 hearing, the Court conducted an extensive plea colloquy with the Petitioner, during which the Petitioner stated to the Court that his guilty pleas were knowing and voluntary, as shown in the following exchanges with the Court:

> THE COURT:  Did you sign this document [referring to the Plea Agreement] after reading it, reviewing it with your attorney, and making sure you understood it?  Was it read to you or did you read it in a language you could understand?
>
> DEFENDANT:  Yes.

ECF No. 100-1 at 13:11-16.

> THE COURT:  And did you sign this document [referring to the Stipulation of Facts] after reading it or having it read to you in a language you could understand, reviewing it with your attorney, and making sure you understood it?

>   THE DEFENDANT:  Yes.

*Id*. at 13:24-14:3.

>   THE COURT:  Did you also sign this document [referring to the
>   sealed supplement to the Plea Agreement] after reading it,
>   reviewing it with your counsel, and making sure you understood
>   it?
>
>   DEFENDANT:  Yes.

*Id*. at 30:4-7.

      The transcript for the Rule 11 hearing also makes clear that the Court, through an interpreter, advised the Petitioner of, among other things, his rights: (1) to persist in a plea of not guilty; (2) to proceed to a jury trial; (3) to have counsel; (4) to confront and cross-examine witnesses; (5) to testify and present evidence; (6) to compel witnesses; and (7) to his right against self-incrimination.  *Id*. at 10:17-12:9.  The Court also advised the Petitioner of the nature of the charges to which he was pleading guilty; the maximum penalties; the sentencing guidelines and other sentencing factors; and his waiver of appellate rights, as outlined in the Plea Agreement.  *Id*. at 9:22-15:15.  In response, the Petitioner stated under oath to the Court that he understood all of those rights and the potential consequences of his guilty pleas.  *Id*.  And so, based upon this plea colloquy, the Court found that the Petitioner's guilty pleas were knowing and voluntary.  *Id*. at 33:13-20.

      Lastly, the Petitioner's claim that he was misled about the sentence that the Court would impose in this matter is contradicted by contemporaneous evidence.  As discussed above, the Court conducted an extensive plea colloquy with the Petitioner during the Rule 11 hearing. During the plea colloquy, the Court specifically addressed the United States Sentencing Guidelines range, as shown in the following exchange:

>   THE COURT: Neither the prosecutor, your lawyer, or even the
>   Court can make a binding prediction, promise, or representations as
>   to what guideline range or sentence you will receive. Do you
>   understand that I am not a part to this plea agreement?
>
>   THE DEFENDANT: Yes.

*Id*. at 29:4-10.

>   THE COURT: Sir, other than what is in this agreement and the matters
>   we discussed today, are there any other promises that have been made
>   to you in order to convince you to enter into this agreement?

13

        THE DEFENDANT: No.

*Id.* at 31:21-25. And so, again, the evidence regarding the Petitioner's guilty pleas contradicts his claim that he was misled with regards to the sentence that the Court would impose.

### B.  The Petitioner Has Not Shown Prejudice To The Defense

        The Court also observes as a final matter that, even if the Petitioner could establish ineffective assistance of counsel with regards to his former Defense Counsel, the Petitioner fails to show that he would have proceeded to trial, but for the alleged ineffective assistance of his counsel. The Petitioner alleges that he would not have pled guilty but for the alleged "cumulative effect" of errors committed by his attorney. ECF 98-1 at 14. But, as discussed above, the factual record before the Court shows that the assistance provided by the Petitioner's former Defense Counsel was not constitutionally ineffective. Indeed, as also discussed above, the factual record makes clear that the Petitioner's guilty pleas were made with the understanding that the sentence imposed by the Court could differ from any sentence suggested by the Petitioner's former Defense Counsel. *United States v. Broce*, 488 U.S. 563, 569 (1989) (noting that where a judgment of conviction upon a guilty plea is subjected to a collateral attack, such as by a Section 2255 motion, the Court's inquiry is "ordinarily confined to whether the underlying plea was both counseled and voluntary").

        Once entered and accepted by the Court, the Court must afford the Petitioner's guilty pleas a strong presumption of being final and binding. *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (stating that once a guilty plea is entered, there is "a strong presumption that the plea is final and binding"); *United States v. Hyde*, 520 U.S. 670, 676 (1997) (holding that a guilty plea represents an admission by the defendant that "he actually committed the crimes," and that "he is pleading guilty because he is guilty"). There is no evidence before the Court to overcome this presumption here. And so, the Court must DENY the Petitioner's motion to vacate.[4]

---

[4] The Court is also satisfied that it is appropriate to resolve the Petitioner's motion without holding an evidentiary hearing, because his claim of ineffective assistance of counsel is supported only by the Petitioner's own allegations regarding alleged errors committed by his former Defense Counsel and these claims are contradicted by the clear evidence in the factual record before the Court. *See* 28 U.S.C. § 2255(b) (A hearing is not required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." ).

14

## V.     CONCLUSION

For the foregoing reasons, the Court **DENIES** the Petitioner's motion to vacate guilty pleas, conviction and sentence (ECF No. 85).

A separate Order shall issue.


**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge